UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 16-cv-6696<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case arises out of a dispute over life insurance proceeds. Plaintiff Carlos Williams believes that Defendant Allstate Insurance Company wrongly refused to pay him any of the proceeds from his late wife's life insurance. Both parties moved for summary judgment under Federal Rule of Civil Procedure 56. [56, 60]. For the reasons explained below, this Court denies Plaintiff's motion and grants Defendant's motion.

### I.   Background

The following facts come from Plaintiff's Local Rule 56.1 statement of facts [58], Defendant's Local Rule 56.1 statement of facts [62], and Defendant's Local Rule 56.1 statement of additional facts [70]. Plaintiff did not respond to Defendant's additional facts, so this Court deems those facts admitted pursuant to Local Rule 56.1(a). *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

### A.   Defendant's Life Insurance Program

Plaintiff's wife, Carol Williams, died of cancer in May 2014. [58] ¶ 2. Before

1

her death, Carol worked for Defendant and participated in its employer-sponsored group life insurance. *Id.* ¶ 3. Defendant provided a life insurance program—Allstate Group Life (AGL)—as a benefit for its employees. [62] ¶ 10. Aon Hewitt acted as record-keeper for AGL and maintained a password-protected website through which Defendant's employees could access their benefits records and make elections, such as designating beneficiaries. *Id.* ¶¶ 11–12.

During 2013, MetLife insured AGL through coverage called Employee Life. *Id.* ¶¶ 14–15. Defendant partially subsidized Employee Life, which provided a benefit equal to an employee's chosen multiple of her Qualified Annual Earnings (QAE). *Id.* ¶ 16. Carol's coverage under Employee Life provided a benefit of five times her QAE. *Id.*

In October 2013, Defendant emailed all of its employees to announce changes to AGL that would become effective in 2014—namely, that Minnesota Life would take over from MetLife as AGL's insurer. *Id.* ¶ 17. This change meant that Employee Life coverage would end on December 31, 2013. [70] ¶ 5. Coverage through Minnesota Life would become effective on January 1, 2014. [62] ¶ 17.

Defendant told its employees that they would have coverage called Basic Life through Minnesota Life. *Id.* ¶ 18. Defendant explained that it would fully subsidize Basic Life, which would provide a benefit equal to an employee's QAE (up to $100,000). *Id.* Defendant also told its employees that they could purchase Supplemental Life, which employees would fully pay for and which would provide a benefit equal to an employee's chosen multiple of her QAE. *Id.* Carol purchased

2

Supplemental Life and had a coverage level of five times her QAE. *Id.* ¶ 41.

In sum, the landscape for Carol's life insurance looked like this:

| 2013—MetLife | | 2014—Minnesota Life | |
|---|---|---|---|
| **Coverage** | **Coverage Level** | **Coverage** | **Coverage Level** |
| Employee Life | QAE x 5 | Basic Life | QAE |
| | | Supplemental Life | QAE x 5 |

## B. Notice of Changes to AGL

When Defendant announced the switch from MetLife to Minnesota Life, Defendant told employees that annual enrollment would take place from October 21, 2013 to November 8, 2013, so employees could make elections through the aforementioned Aon Hewitt website. *Id.* ¶ 20. Defendant explained that, if employees enrolled in Supplemental Life, their coverage level for Employee Life would become their coverage level for Supplemental Life unless they made a different election during annual enrollment. *Id.* ¶ 21. Any employee who elected to increase Supplemental Life coverage beyond five times her QAE would need to provide "evidence of insurability." *Id.* ¶ 23. Minnesota Life sent Defendant's employees additional information about the coverage it would offer and advised employees to check their beneficiaries regularly to make sure the designations matched "the intent of how you want your life insurance benefit paid." *Id.* ¶ 22.

In early October 2013, Aon Hewitt used employees' beneficiary designations from Employee Life to set default beneficiaries for Basic Life and Supplemental Life. *Id.* ¶ 19. Aon Hewitt also set default coverage levels for Supplemental Life to

3

match employees' coverage levels under Employee Life. *Id.* During annual enrollment, Aon Hewitt's password-protected website displayed an information screen informing employees that Aon Hewitt had applied their 2013 beneficiary information from Employee Life to the 2014 coverage under Basic Life. *Id.* ¶ 29. The information screen also told employees to access the Basic Life webpage if they wanted to update their beneficiaries. *Id.*

Under Minnesota Life's policy, employees who enrolled in Supplemental Life would have the same beneficiaries for both Supplemental Life and Basic Life because "it was not possible to designate different beneficiaries" for the two coverages. *Id.* ¶ 31. During annual enrollment, the information screen for Supplemental Life displayed an alert at the top of the page warning employees that beneficiary selections they made for Basic Life would also apply to Supplemental Life. *Id.* ¶ 30.

### C. Carol's Beneficiaries

As of October 2013, Carol had designated Plaintiff; her daughter, Sydney Griggs (from a previous relationship); and BCW, her minor son with Plaintiff, as equal primary beneficiaries for Employee Life. [70] ¶ 15. Thus, when Aon Hewitt used Employee Life designations to populate default beneficiaries for the new Minnesota Life coverage, it designated Plaintiff, Griggs, and BCW as equal primary beneficiaries for Carol's Basic Life. *Id.* ¶ 16. Screenshots from Aon Hewitt's database show, however, that Carol took advantage of annual enrollment by changing her Basic Life beneficiaries on November 1, 2013. *Id.* ¶¶ 18, 20.

4

Carol left her beneficiary designations for Employee Life—the policy terminating at the end of 2013—unchanged. *Id.* ¶ 19. But she changed her beneficiaries for Basic Life (and accordingly, Supplemental Life) to make her two children equal primary beneficiaries and make Plaintiff a contingent beneficiary. *Id.* ¶ 20; [62] ¶ 31. Carol also attempted to increase her coverage level for Supplemental Life beyond five times her QAE, but Minnesota Life never completed that change because Carol did not provide the required "evidence of insurability." [70] ¶¶ 26–27. Thus, Carol's coverage level for Supplemental Life remained at the same coverage level that she had for Employee Life. *Id.* ¶ 26.

Plaintiff denies that Carol changed her beneficiaries. Defendant's personnel records show that Carol did not take time off work on November 1, 2013 (a Friday), *id.* ¶ 17, but Plaintiff claims that he and Carol spent the day together in Wisconsin and that she did not access a computer, [58] ¶ 13. He also testified that he believed "there was a conspiring to cover up the fact that someone internally changed or removed me off as beneficiary." [58-1] at 7.

Plaintiff's speculation about a conspiracy cannot create a genuine issue of material fact at summary judgment. *See Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). And this Court deemed admitted Defendant's statement of additional facts because Plaintiff failed to respond to them, meaning that Plaintiff effectively admitted that Carol went to work on November 1. *See Malec*, 191 F.R.D. at 584. Regardless, Plaintiff offers no evidence that anyone else had Carol's password or that anyone else accessed her account. The only reasonable inference to draw from

5

Aon Hewitt's records (and Plaintiff's lack of contrary evidence) is that Carol accessed her account and changed her beneficiaries on November 1.

In sum, Aon Hewitt's records reflect the following for Carol's beneficiaries:

| 2013—MetLife | | 2014—Minnesota Life | |
|---|---|---|---|
| **Coverage** | **Beneficiaries** | **Coverage** | **Beneficiaries** |
| Employee Life | Griggs: 1/3 | Basic Life | Griggs: 1/2 |
| | | | BCW: 1/2 |
| | BCW: 1/3 | | Plaintiff: contingent (100%) |
| | Plaintiff: 1/3 | Supplemental Life | Griggs: 1/2 |
| | | | BCW: 1/2 |
| | | | Plaintiff: contingent (100%) |

**D.     Mailed Beneficiary Notice and Payouts**

After Carol changed her beneficiaries on November 1, Aon Hewitt's system automatically generated and mailed a "Beneficiary Confirmation Notice" to Carol. [70] ¶ 24. The notice reflected Carol's designated beneficiaries under AGL as of that date, meaning it showed her beneficiaries for both Employee Life and Basic Life. *Id.* ¶ 25. The notice listed Plaintiff, Griggs, and BCW as equal primary beneficiaries under Employee Life, and Griggs and BCW as equal primary beneficiaries under Basic Life, with Plaintiff listed as a contingent beneficiary. [62-1] at 10–11. The notice did not provide any information about policy expiration
6

dates or terms and conditions. [70] ¶ 25. Carol did not receive any subsequent beneficiary notices before she died. [58] ¶ 10.

When Carol died in May 2014, her elections remained unchanged from November 1, 2013: her two children were equal primary beneficiaries of her Minnesota Life policy. [70] ¶ 29. Thus, Minnesota Life split the $94,000 Basic Life benefit and the $470,000 Supplemental Life benefit evenly between BCW and Griggs, with the small caveat that roughly $6,000 came out of Griggs' portion of Basic Life to pay for funeral costs. *Id.* ¶ 33. Plaintiff demanded that Minnesota Life pay him one-third of the Supplemental Life Benefit, which Minnesota Life refused to do. [69] ¶ 7. Plaintiff then sued Defendant, various high-level Allstate employees, Minnesota Life, Aon Hewitt, and others in 2016; he later voluntarily dismissed all parties except Defendant. [34, 54].

## II.   Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki*, 765 F.3d at 746.

7

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That said, Rule 56 mandates entering summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," because such a failure of proof "necessarily renders all other facts immaterial." *Id.* at 322–23.

## III. Analysis

Plaintiff claims that Defendant violated the Employee Retirement Income Security Act (ERISA) by not paying him one-third of the $470,000 benefit for Carol's Supplemental Life coverage. [35] ¶ 3.[1] Although Plaintiff argues that Defendant breached its fiduciary duties, *see* [74] at 4, he brings his claim under 29 U.S.C. § 1132(a)(1)(B), which authorizes beneficiaries to bring civil suits to recover benefits due under the terms of a plan. Defendant argues that it complied with ERISA by adhering to the plan documents and paying the $470,000 benefit to the two primary beneficiaries that Carol designated. *See generally* [75]. This Court agrees.

---

[1] Even though Defendant failed to address the issue, this Court notes that Plaintiff potentially pursued his case against the wrong entity. ERISA normally allows suits to recover benefits only against the plan itself. *Leister v. Dovetail, Inc.*, 546 F.3d 875, 879 (7th Cir. 2008). Nevertheless, given how "closely intertwined" Defendant and the plan were, *see, e.g.*, [62-10] at 4 (information packet for annual enrollment featured Minnesota Life's logo and Defendant's logo); [62-13] at 2 (Defendant sent communications about the plan to Carol's family after her death), Defendant effectively acted as a plan administrator, so this case may properly proceed against Defendant, *see Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001).

8

ERISA requires employee-benefit plans to "specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b)(4). It also requires that plan fiduciaries administer a plan "in accordance with the documents and instruments governing the plan," *id.* § 1104 (a)(1)(D), including by making payments to beneficiaries "designated by a participant," *id.* § 1002(8); *see also Melton v. Melton*, 324 F.3d 941, 944 (7th Cir. 2003). Additionally, ERISA instructs courts to strictly enforce plan terms. *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997) (citing § 1104 (a)(1)(D)). When a plan provides "liberal mechanisms for changing beneficiaries (as in this case), 'strict' enforcement means allowing participants to do exactly that." *Id.*

Defendant complied with all the ERISA requirements outlined above. The informational materials that Defendant gave its employees about the switch to Minnesota Life: (1) explained the importance of choosing beneficiaries; (2) defined the different types of beneficiaries, including primary and contingent beneficiaries; (3) advised employees to check their beneficiaries regularly; and (4) explained that employees could check and/or update their beneficiary designations through the Aon Hewitt benefits website. *See* [62-10] at 17. Defendant also told employees when the changes to their insurance coverage would take effect, and said that employees could use the Aon Hewitt website to change their beneficiaries. [62] ¶ 20. The website itself featured numerous warnings advising employees that: (1) their Employee Life beneficiaries carried over to Basic Life by default; (2) they should visit the Basic Life screen to change their beneficiaries; and (3) any beneficiaries

9

they designated for Basic Life would also be designated as beneficiaries for Supplemental Life. *Id.* ¶¶ 29–31.[2] Thus, Defendant complied with § 1102(b)(4) by specifying how it would make payments from the plan.

Defendant also complied with ERISA by administering the plan in accordance with the plan documents—namely, by paying the Supplemental Life benefit to the beneficiaries that Carol designated through Aon Hewitt's website during annual enrollment. *See Melton*, 324 F.3d at 944. Plaintiff bemoans the lack of any "manual documentation" expressing Carol's intent for how Defendant should distribute her life insurance proceeds. [74] at 2. But ERISA has no explicit requirements for how plans allow participants to select their beneficiaries. *See Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002). Where, as here, a plan provides "liberal mechanisms for changing beneficiaries," such as an online portal, strictly enforcing the plan means allowing participants to change their beneficiaries through those liberal mechanisms. *Riordan*, 128 F.3d at 552.

Plaintiff's claim that he should have received one-third of the Supplemental Life benefit rests almost entirely upon his erroneous assertion that Employee Life (a MetLife policy) "became" Supplemental Life (a Minnesota Life policy). *See, e.g.*, [58] ¶ 9 ("employee life insurance would become supplemental life insurance"). The record does not support that assertion, but Plaintiff relies upon it to argue that he

---

[2] Plaintiff argues that Defendant has no evidence that Carol actually saw those warnings. [74] at 5. This argument borders upon the frivolous. Defendant's evidence clearly establishes that Carol attempted to increase her coverage level for Supplemental Life, [70] ¶ 26, and that any employee attempting to change her Supplemental Life coverage level would have visited the Supplemental Life screen that featured this warning at the top of the page (next to a red circle enclosing an exclamation mark): "ALERT: Beneficiaries selected through the Basic Employee Life plan will also be used for your Supplemental Employee Life plan," [62] ¶ 30; [62-6] at 21.

10

should have received one-third of the Supplemental Life benefit because the November 1 beneficiary confirmation notice listed him as a one-third primary beneficiary for Employee Life. *See, e.g.*, [57] at 5.

Contrary to Plaintiff's view, Defendant's informational materials explained the switch from Employee Life to Supplemental Life as follows: "If you do nothing during Annual Enrollment, your 2013 *level* of Employee Life Insurance (x your QAE) will become *the coverage level* for your Supplemental Life Insurance benefit in 2014—unless you elect otherwise during Annual Enrollment." [62-10] at 9 (emphasis added). Saying that Supplemental Life would have a default coverage level that matched Employee Life's coverage level is a far cry from saying that Employee Life would become Supplemental Life. Employee Life—a policy offered by Minnesota Life's competitor—could not "become" a Minnesota Life policy. Thus, the beneficiary confirmation notice accurately reflected Carol's designations: it showed that she left Plaintiff as an equal primary beneficiary for Employee Life, but made him a contingent beneficiary for Basic Life (and thus Supplemental Life). [62-1] at 10–11.

Plaintiff also argues that Defendant violated its fiduciary duties by not sending Carol another beneficiary confirmation notice after January 1, 2014, when the Minnesota Life coverage took effect. [57] at 6 (citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466–67 (7th Cir. 2010)). Defendant responds that it did not need to send another notice because Carol made no further changes to her beneficiaries after annual enrollment in 2013. [75] at 11. This Court agrees. As

11

explained above, the beneficiary confirmation notice accurately reflected the changes that Carol made during annual enrollment, thus satisfying Defendant's "obligation to communicate material facts affecting the interests of beneficiaries." *Kenseth*, 610 F.3d at 466.

Because Plaintiff fails to provide any evidence to show that Carol intended him to be a primary beneficiary for her Supplemental Life coverage, and because Defendant shows that it complied with ERISA by paying Carol's Supplemental Life benefit to her designated beneficiaries, this Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment. *See Celotex*, 477 U.S. at 322–23 (Rule 56 mandates entering summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## IV. Conclusion

This Court denies Plaintiff's motion for summary judgment [56] and grants Defendant's motion for summary judgment [60]. The Clerk is directed to enter judgment against Plaintiff and for Defendant. All dates and deadlines are stricken. Civil case terminated.

Dated: April 9, 2018

Entered:

_____
John Robert Blakey
United States District Judge